**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Stanley Dale PEARSON, Sr., Defendant–Appellant.**

**No. 01–50148.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 2002.

Filed Dec. 16, 2002.

James H. Locklin, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

Ronald L. Chen, Assistant United States Attorney, Nancy B. Spiegel, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before: NOONAN, WARDLAW and BERZON, Circuit Judges.

NOONAN, Circuit Judge:

The narrow issue before the court is whether the district court correctly increased Stanley Dale Pearson's sentence for bank robbery and escape because he had a previous conviction that resulted in him being "incarcerated." *See* U.S. Sentencing Guidelines § 4A1.2(e)(1) (2001) (U.S.S.G.). Within the fifteen years before he committed the current crimes, Pearson had been sentenced to ten years imprisonment. Under the usual circumstances, this sentence would have been counted under U.S.S.G. § 4A1.2(e)(1). Pearson had escaped that confinement and so was not physically incarcerated during the critical period. We hold that the time during which Pearson was on escape status under his 1980 conviction was correctly counted as a period of "incarceration" under § 4A1.2(e)(1).

## BACKGROUND

On December 15, 1998, Stanley Dale Pearson was indicted on two counts of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of escape in violation of 18 U.S.C. § 751. Pearson entered a guilty plea and was sentenced to concurrent sentences of 151 months of incarceration on each count of bank robbery and 60 months of incarceration on the escape count. The district court included in its sentencing calculation, for both criminal history and career offender purposes, a conviction Oregon had imposed on Pearson in April 1980.

Under the 1980 conviction Pearson was sentenced to ten years in state prison. He began serving that sentence but escaped on December 4, 1981 and remained at large until he was arrested on April 21, 1982, on federal bank robbery charges.

Pearson was incarcerated on these charges in federal prison and remained in confinement until he was paroled on November 4, 1997. On August 1, 1986, Oregon administratively discharged Pearson from serving the remainder of his April 1980 sentence.

The district court used the 1980 Oregon conviction and sentence as well as the 1982 federal convictions and sentence to classify Pearson as a career offender under U.S.S.G. § 4B1.1. Pearson appeals his sentence on the ground that the 1980 conviction was improperly included in the calculation.

## ANALYSIS

We confront Pearson's contention with a principle fundamental to our law: No one should profit from his legal wrong. *See Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188, 190 (1889). Pearson committed the crime of escape. Ergo, his crime should not reduce his punishment. The commentary on U.S.S.G. § 4A1.2(e) explicitly provides: "To qualify as a sentence of imprisonment, the defendant must actually have served a period of imprisonment on such sentences (or, if the defendant escaped would have served time)." As interpreted by the commentary, the guideline indicates that escape time counts as imprisonment time. So Pearson gains no advantage by being physically out of custody.

The dissent notes that the Guidelines have at several points taken care to specify "escape status." *See, e.g.,* §§ 4A1.1, 4A1.1(e), and 4A1.2(2). Failure to be explicit in § 4A1.2(e) could be read as deliberate omission, as the dissent reads it, or the omission could be treated as unintentional and not a deliberate deviation from the general equation of escape to imprisonment. The general principle denying that one profit from one's crime counsels the latter reading.

The dissent presents such a tightly woven argument that it is desirable to indicate where precisely it goes astray. Section 4A1.2(e), which defines "Applicable Time Period," reads:

Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year-period.

This sub-section should be read as a unit. Its second part expands the possible universe of "prior sentences" in the first part to include those for which the defendant received a sentence before the applicable fifteen-year window and for which his incarceration continues into the fifteen-year window. For example, a defendant who was sentenced to prison sixteen years ago and served a five-year sentence would have that sentence counted in the calculation. A defendant who was sentenced twenty years ago and served a four-year sentence would not have that sentence counted.

The commentary to § 4A1.2(e) provides, "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time)." U.S.S.G. § 4A1.2 cmt. 2 (2001). The commentary applies to all of the sub-section. The commentary addresses one measure of recency. To find two different measures of recency embedded in the same provision is to suppose that the Guidelines contradict themselves.

AFFIRMED.

BERZON, Circuit Judge, dissenting:

I respectfully dissent.

In determining criminal history and career offender status, U.S.S.G. § 4A1.2(e)(1) directs the sentencing judge to "count [for criminal history category calculation] any prior sentence of imprisonment exceeding one year and one month whenever imposed, that resulted in the defendant being incarcerated during any part of [the fifteen years prior to the commencement of the current offense]." Pearson maintains that, because he had escaped his confinement in Oregon prison more than fifteen years before he committed the current offense, his incarceration under the 1980 Oregon sentence ended with his escape and did not continue into the requisite fifteen-year window of time. The majority disagrees.

A densely interwoven set of Guidelines provisions governs this case:

First, Section 4B1.1 describes who shall be considered a "career offender" and what are the consequences of that determination. It provides:

A defendant is a career offender if ... the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense ... A career offender's criminal history category in every case under this subsection shall be Category VI.

U.S.S.G. § 4B1.1. Section 4B1.2, *Definitions of Terms Used in Section 4B1.1,* specifies that a defendant has "two prior felony convictions" if:

(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense ...

and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a),(b), or (c).

U.S.S.G. § 4B1.2(c). Section 4A1.1, which defines Criminal History Category, states, in turn:

[T]otal points from items (a) through (f) determine the criminal history category ... (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

U.S.S.G. § 4A1.1.

Following the threads further, one comes to a definition of "prior sentence" under § 4A1.2(a)(1) as "any sentence previously imposed upon adjudication of guilt." *See* U.S.S.G. § 4A1.1, cmt. ("The definitions and instructions in § 4A1.2 govern the computation of criminal history points."). "Sentence of imprisonment" has a more distinct meaning than "prior sentence." It "means a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. § 4A1.2(b)(1).

Finally, only sentences imposed or served during the "Applicable Time Period," U.S.S.G. § 4A1.2(e), may be used for the calculation of criminal history category and career offender status. Section § 4A1.2(e)(1) directs the sentencing judge to include in such calculation:

Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense ... [and] any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1).

Section 4A1.2(e)(1) thus creates a two-pronged standard for determining whether to count a particular sentence: The first addresses sentences of incarceration imposed within the relevant fifteen-year window; the second, the one at issue here,

addresses sentences of incarceration imposed *prior* to the beginning of that fifteen-year window, if incarceration under the sentence continues into that relevant time period.

The majority's conclusions regarding the application of the second prong of § 4A1.2(e)(1) of the Guidelines to an individual who escaped from prison would be understandable if we were free to make policy decisions. As I read the Guidelines, however, the Sentencing Commission had a more discrete set of measures of *recency* of recidivism in mind than the majority posits. Nor is the Application Note to 4A1.2(e)(1) here applicable.

I come to this conclusion for the following reasons:

The appropriate treatment of escape status for purposes of counting prior sentences is specifically addressed in various subsections of the Guidelines, but not in this one. For example, § 4A1.1(d) of the Guidelines provides that the sentencing judge is to "[a]dd two points if the defendant committed the instant offense while under any criminal justice sentence, including ... escape status." Similarly, § 4A1.1(e) provides that the sentencing judge is to "[a]dd two points if the defendant committed the instant offense ... while in imprisonment or escape status on such a sentence [referring to those sentences described in § 4A1.1(a) and (b)]."

The Guidelines' Background discussion with regard to § 4A1.1(d) and (e) explains that those provisions are intended to provide a "measure of recency." The degree of detail with which the Sentencing Commission considered the import of escape for measuring recidivism and recency is suggested by the fact that § 4A1.2(n) specifically addresses when a prisoner should be considered to be on escape status for purposes of § 4A1.1(d) and (e), providing that "failure to report for service of a

sentence of imprisonment shall be treated as an escape from such sentence."

In contrast to the sections previously noted, § 4A1.2(e)(1) does not itself describe how escape status is to be treated. However, as the majority notes, the commentary to that section does address the escape status question, but only, as I read it, with respect to the first sentence of § 4A1.2(e)(1), not the second.

The commentary provides that "[T]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time). *See* U.S.S.G. 4A1.2(a)(3) and (b)(2)." U.S.S.G. § 4A1.2 cmt. n.2 (2001). This explanation does indicate that for purposes of the first sentence of § 4A1.2(e)(1), the fact that a prisoner never served any time at all because he escaped before doing so does not mean that the sentence was not a sentence of imprisonment. That description makes perfect sense in the context of the first sentence of the "Applicable Time Period," as that sentence is concerned with the sentence imposed and not with the time that the defendant was actually in prison.

The second sentence of § 4A1.2(e)(1), however, must be directed to a different "measure of recency" than the first; otherwise, there would be no reason to have two separate provisions. That measure focuses not on the fact that the defendant committed a second crime within a certain time period after a sentence was imposed but instead on the fact that the defendant committed a second crime within a certain time period *after he was in prison.*

The reason for this second provision is nowhere explained. One can surmise that the concern was that a person who, having actually been in prison and subject to its attendant regime of punishment and reha-

bilitation, nonetheless committed a second crime shows a greater tendency toward recidivism than a person who was not imprisoned during the fifteen-year period prior to his current crime, even if both were convicted at the same time. In other words, if relatively recent incarceration did not have an impact on a defendant who meets the standards of the second sentence of § 4A1.2(e)(1), then he or she is a more hardened criminal and should receive a longer sentence.

The language of the second prong of § 4A1.2(e)(1), in my view, cannot be read in any other way. The sentence focuses on whether a prior sentence of imprisonment *"resulted* in the defendant *being incarcerated"* (emphasis added) during a certain time period. These words can only refer to the real world impact of *actual* incarceration, not of attributed, putative, or constructive incarceration. Nor do these words indicate concern with moral or legal judgments about the defendant's behavior during the requisite time period.

I recognize that this reading appears to give the defendant a benefit for having escaped that he would not have attained had he not done so. To that objection my response is that the Commission clearly intended this result, and we are not at liberty to question the wisdom of it. Given the independent penalties applicable under state and federal law for the crime of escaping from prison and the Guidelines' own incorporation of significant sentencing enhancements for those who escape, *see* U.S.S.G. § 2P1.1, my understanding of the Guidelines' § 4A1.2(e)(1), if implemented, is hardly likely to encourage escapes.

In short, using all rather than some of the clues available in the pertinent Guidelines sections, I conclude that there was a discrete decision made that for purposes of this *one* provision only, actual incarceration should count and escape status should not. I therefore respectfully dissent.