FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSE YOBANI MADRID-BECERRA,
AKA Jose Jobane Madrid Becerra,
AKA Jose Madrid-Mesena,
*Defendant-Appellant.*

No. 19-10458

D.C. No.
2:19-cr-01067-
DJH-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted May 13, 2021
Pasadena, California

Filed October 1, 2021

Before: Jay S. Bybee and Daniel A. Bress, Circuit Judges,
and Kathleen Cardone,[*] District Judge.

Opinion by Judge Bybee;
Dissent by Judge Cardone

---

[*] The Honorable Kathleen Cardone, United States District Judge for
the Western District of Texas, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a sentence in a case in which the defendant, who was convicted of illegal re-entry under 8 U.S.C. § 1326(a), argued that the district court erred by applying U.S.S.G. § 4A1.1(d), which assigns two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

After serving a portion of a 2013 Arizona state sentence in prison, the defendant was granted early conditional release under Ariz. Rev. Stat. § 41-1604.14 (repealed Aug. 6, 2016), known as the "half-term to deport" program. The crux of the defendant's argument was that he did not commit his illegal re-entry offense "while under any criminal justice sentence."

The panel rejected the defendant's argument that his early release did not provide for supervision of, or place restrictions or conditions on, his subsequent actions. The panel wrote that there is no question that the Arizona sentence was imposed and that as a condition of his early release from prison, Arizona required that the defendant not illegally reenter the United States. If he did so and was discovered, his release was to be revoked and he was to be returned to custody to serve the remainder of his initial sentence. This condition was mandatory, part and parcel of the terms of his

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

original sentence under Arizona law, and reflects a "custodial or supervisory component" akin to probation (U.S.S.G. § 4A1.1 cmt. n.4).

The panel rejected the defendant's argument that, at the time he was discovered in the United States, he was no longer under a criminal justice sentence because the statute authorizing revocation of his release had been repealed. The panel explained that Arizona's general savings statutes require that, for aliens like the defendant who were convicted when § 41-1604.14 was in force, that provision continues to govern their sentences, and that the Arizona Department of Corrections maintained the authority to revoke his release because of his illegal re-entry.

The panel held that even if the district court erred in assuming that the defendant had received formal notice of the condition that he not return illegally from the state court during sentencing, the defendant did not demonstrate that this alleged error affected his substantial rights. The panel held that the district court did not clearly err in finding that the defendant's early release was in fact revoked, but noted that neither the Sentencing Guidelines nor its Commentary requires that any parole or release actually be revoked, or that an escapee be apprehended, for § 4A1.1(d) to apply.

Dissenting, District Judge Cardone wrote that § 4A1.1(d) does not apply to a scheme such as Arizona's half-term to deportation program under which each day the defendant spent on his "conditional release" brought him no closer to the termination of his sentence.

**COUNSEL**

Michael L. Burke (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Defendant-Appellant.

Seth T. Goertz (argued), Assistant United States Attorney; Krissa M. Lanham, Appellate Division Chief; Michael Bailey, United States Attorney; United States Attorney's Office, Phoenix, California; for Plaintiff-Appellee.

**OPINION**

BYBEE, Circuit Judge:

Defendant Jose Madrid-Becerra appeals from his sentence for a conviction of illegal re-entry under 8 U.S.C. § 1326(a). He argues that the district court erred by applying United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 4A1.1(d) to raise his criminal history score and, consequently, his Guidelines range. The crux of Madrid-Becerra's argument is that he did not commit his illegal re-entry offense "while under any criminal justice sentence," as required by § 4A1.1(d).

Because the district court correctly applied § 4A1.1(d), we affirm Madrid-Becerra's sentence.

## I. BACKGROUND

In June 2013, Madrid-Becerra was convicted of solicitation to commit transportation of marijuana for sale

under Arizona law and sentenced to two and a half years. After serving a portion of his sentence in prison, he was granted early conditional release under Ariz. Rev. Stat. § 41-1604.14 (repealed Aug. 6, 2016), known as the "half-term to deport" program. That statute permitted the Arizona Department of Corrections (ADOC) to "release a prisoner to the custody and control of the United States immigration and customs enforcement" if ADOC receives an order of deportation, the prisoner has served at least one-half of the sentence imposed, and the offense meets certain other requirements. *See* Ariz. Rev. Stat. § 41-1604.14(A). It also provided that "[i]f a prisoner who is released pursuant to this section returns illegally to the United States, on notification from any federal or state law enforcement agency that the prisoner is in custody, [ADOC] shall revoke the prisoner's release." *Id.* § 41-1604.14(B). Shortly after ADOC released Madrid-Becerra in 2014 to the custody of the United States pursuant to § 41-1604.14, he was removed to Mexico.

Madrid-Becerra re-entered the United States without inspection in June 2016. In December 2017, Madrid-Becerra was arrested by local Arizona police on assault charges. He was later convicted of attempted aggravated assault and sentenced to eighteen months imprisonment. The Maricopa County Superior Court ordered his sentence to run concurrent with the remainder of his sentence from his 2013 offense.

In July 2019, Arizona released Madrid-Becerra to U.S. Immigration and Customs Enforcement (ICE) custody, which detained him on a felony complaint. He was later indicted for illegal re-entry and pleaded guilty to the offense. At sentencing, the Pre-Sentence Report (PSR) prepared by the United States Probation Office assessed a criminal history score of eight, two points of which were due to the PSR's

conclusion that Madrid-Becerra "committed the instant offense while under a criminal justice sentence for [his 2013 conviction for] solicitation to commit transportation of marijuana for sale." U.S.S.G. § 4A1.1(d). His criminal history score placed his Guidelines range for custody at 46 to 57 months, though the PSR recommended a downward departure to 27 months.

Madrid-Becerra objected to the PSR's assessment of the "two-level enhancement for committing the instant offense while under a criminal justice sentence" because Arizona's "half-term to deport" program "does not have any custodial or supervisory component." He argued that without the extra two points, his Guidelines range would have been 37 to 46 months. The district court heard argument on this objection at sentencing but found that the enhancement was applicable. The court thereafter sentenced Madrid-Becerra to 27-months imprisonment with credit for time served, followed by three years of supervised release. His projected release date is August 3, 2021.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review Madrid-Becerra's sentence under 28 U.S.C. § 1291. "We review de novo the district court's interpretation of the Sentencing Guidelines," including the calculation of the criminal history score. *United States v. Gonzalez*, 739 F.3d 420, 422 n.1 (9th Cir. 2013) (citing *United States v. Lichtenberg*, 631 F.3d 1021, 1024 (9th Cir. 2011)). We review "the district court's application of the Sentencing Guidelines to the facts of this case for abuse of discretion, and the district court's factual findings for clear error. *United States v. Stoterau*, 524 F.3d 988, 997 (9th Cir. 2008) (citation omitted).

## III. ANALYSIS

Madrid-Becerra argues that the district court improperly applied U.S.S.G. § 4A1.1(d) because he was not "under any criminal justice sentence" when he committed his illegal re-entry offense.  First, Madrid-Becerra argues that his early release did not provide for supervision of, or place restrictions or conditions on, his subsequent actions.  Second, he argues that because Arizona repealed its "half-term to deport" program in 2016, ADOC lacked authority to reinstate his sentence in 2017.  Third, he asserts that the district court clearly erred in determining that he had notice that his return to the United States would result in reinstatement of his sentence and that his sentence was actually reinstated.  We disagree on all counts.

## A.  *Custodial or Supervisory Component*

U.S.S.G. § 4A1.1(d) provides that two points should be added to the defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  The commentary states that "a 'criminal justice sentence' means a sentence countable under § 4A1.2 . . . having a custodial or supervisory component, *although active supervision is not required for this subsection to apply*."  U.S.S.G. § 4A1.1, cmt. n.4 (emphasis added).  The commentary specifically notes that "a term of unsupervised probation would be included, but a sentence to pay a fine, by itself, would not be included."  *Id.*

Madrid-Becerra asserts that there were no restrictions or conditions placed on his subsequent actions after his release.

This is plainly incorrect. Ariz. Rev. Stat. § 41-1604.14(B) provided that early release "shall" be revoked if the defendant "returns illegally to the United States" and the ADOC receives notification from "any federal or state law enforcement agency" that the defendant is in custody. This is both a restriction and a condition. The benefit of Arizona's early release could only be enjoyed so long as Madrid-Becerra did not re-enter the United States illegally. If he re-entered illegally, his early release was subject to revocation by ADOC, and he would have to serve the remainder of his sentence. This condition is sufficient to supply the "supervisory component" required by U.S.S.G. § 4A1.1(d). *See United States v. Franco-Flores*, 558 F.3d 978, 981–82 (9th Cir. 2009).

Madrid-Becerra argues that there must be some active form of supervision to trigger the application of § 4A1.1(d). The comment to § 4A1.1 is quite clear on this point: "active supervision is not required for this subsection to apply." U.S.S.G. § 4A1.1, cmt. n.4. Our decision in *United States v. Ramirez-Sanchez*, 338 F.3d 977 (9th Cir. 2003), is on point. In that case, upon his release from custody for having committed an unspecified crime, Ramirez-Sanchez was deported without having gone into active probation supervision. *Id.* at 979. Like Madrid-Becerra, Ramirez-Sanchez argued that U.S.S.G. § 4A1.1(d) did not apply to him because he was not supervised in any way following his deportation. *Id.* We explained that "a term of supervised release remains intact after a defendant's deportation." *Id.* at 980. We noted that Congress, in a section entitled "Inclusion of a term of supervised release after imprisonment," has provided:

> If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation.

18 U.S.C. § 3583(d). We thus concluded that despite the lack of active supervision, "deportation does not terminate supervised release . . . [or] probation." *Ramirez-Sanchez*, 338 F.3d at 981; *see also United States v.* Gonzalez, 739 F.3d 420, 423–24 (9th Cir. 2013) (holding that deportation did not terminate the defendant's parole and that unsupervised parole was sufficient for § 4A1.1(d)); *United States v. McCrudden*, 894 F.2d 338, 339 (9th Cir. 1990) (per curiam) ("Even if unsupervised, probation can be revoked and replaced by a sentence of greater punishment if further offenses are committed during the probationary period. The non-supervisory status of a sentence of probation does not exempt it from section 4A1.1(d).").

Madrid-Becerra argues that nothing "in the record suggests that . . . he was under any form of supervision by any probation officer or ADOC employee." But even assuming Madrid-Becerra was not subject to court-ordered conditions of release, that is not the issue. Rather, the question is whether Madrid-Becerra was subject to *any* condition that related to a "custodial or supervisory component" of his sentence. He was. Madrid-Becerra was released subject to the statutory condition that he not illegally re-enter the United States. Otherwise his release would be subject to revocation, and he would have to serve the remainder of his sentence. It was a clear rule, with a clear consequence related to a "custodial or supervisory"

component, and he was subject to ADOC supervision on the basis of this condition.

Madrid-Becerra also contends that ADOC could not be supervising him because, under § 14-1604.14, revocation of his release was triggered by notification from "some *other* law enforcement agency." But this is also immaterial. That one law enforcement agency would learn about information from another agency is neither surprising nor novel. It is quite common for parole or probation to be revoked based on a notification from another law enforcement agency. An offender out on federal supervised release may be subject to revocation because a state law enforcement agency has notified the federal probation officer of a violation. A state or federal law enforcement agency notifying the ADOC of a violation is no different. What matters is that ADOC retained the ability to "supervise" Madrid-Becerra's behavior, even if it did not do so directly.

*United States v. Kipp*, 10 F.3d 1463 (9th Cir. 1993), and *United States v. Gonzalez Vazquez*, 719 F.3d 1086 (9th Cir. 2013), do not govern here. In *Kipp*, the defendant had a suspended sentence for a traffic offense. We first found that "[b]y definition, a suspended sentence has no 'custodial component.'" 10 F.3d at 1467. In Kipp's case, "[s]ince [a] sentence has not been imposed, the defendant cannot be 'under' a sentence" for the purposes of § 4A1.1(d). *Id.* (footnote omitted). Thus, unless a suspended sentence had "an accompanying term of probation," it is "not a 'criminal justice sentence,' as that term is used in § 4A1.1(d)." *Id.*; *see also Franco-Flores*, 558 F.3d at 982 (recognizing that in *Kipp*, there was no supervisory component because "no conditions whatsoever were imposed on the defendant, including any probation-like components.").

*Gonzalez Vazquez* is also inapposite. That case was concerned not with the relevant section of the Guidelines at issue here, but with § 4A1.2(c)(1)(A), which makes certain misdemeanor offenses "countable" for purposes of the criminal history computation if they were accompanied by a term of "probation." *See* 719 F.3d at 1089 & n.8. In contrast, "criminal justice sentence" in § 4A1.1(d) includes, but is not limited to, probation. *See* U.S.S.G. § 4A1.1 cmt. n.4 (noting that "any criminal justice sentence" "include[s] probation, parole, supervised release, imprisonment, work release, or escape status"); *see also Franco-Flores*, 558 F.3d at 982 ("[A] suspended sentence with a supervisory or custodial component can constitute a 'criminal justice sentence' under section 4A1.1(d)."). Moreover, as in *Kipp*, it was unclear from the state statute "whether a court that suspends all or part of a sentence merely may, or must, direct any supervision of misdemeanants." *Id.* at 1092. We concluded that in the absence of any express imposition of probation, "the better inference is that Gonzalez Vazquez was not sentenced to probation," and his suspended sentence therefore did not count for the purposes of his Guidelines calculation. *Id.* at 1092.

Here, there is no question that Madrid-Becerra's sentence was imposed and that as a condition of his early release from prison, Arizona required that Madrid-Becerra not illegally reenter the United States. If he did so and was discovered, his release was to be revoked and he was to be returned to custody to serve the remainder of his *initial* sentence. This condition was mandatory, part and parcel of the terms of his original sentence under Arizona law, and reflects a "custodial or supervisory component" akin to probation. U.S.S.G. § 4A1.1 cmt. n.4. We hold that Madrid-Becerra was "under

any criminal justice sentence" when he illegally reentered the United States within the meaning of U.S.S.G. § 4A1.1(d).

B.  *Repeal of the Arizona Statute*

Madrid-Becerra also argues that, at the time he was discovered in the United States, he was no longer under a criminal justice sentence because the statute authorizing revocation of his release had been repealed.  In 2016, the Arizona legislature repealed the half-term to deportation program.  *See* 2016 Ariz. Sess. Laws, ch. 89, § 1.  Madrid-Becerra argues that absent a savings clause or general saving statute, the repeal "divests the right to proceed under the statute."  But Arizona *does* have a savings statute.  In fact, it has two of them: Ariz. Rev. Stat. §§ 1-246, 1-247.[1]  These statutes provide that "the repeal or alteration of any statute shall not have the effect of exempting from punishment a person who has offended against the altered or repealed law."

---

[1] A.R.S. § 1-247 provides:

> When by the provisions of a repealing statute a new penalty is substituted for an offense punishable under the law repealed, such repealing statute shall not exempt from punishment a person who has offended against the repealed law while it was in force, but in such case the rule prescribed in § 1-246 shall govern.

In turn, A.R.S. § 1-246 provides:

> When the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second took effect, but the offender shall be punished under the law in force when the offense was committed.

*State v. Vineyard*, 392 P.2d 30, 33 (Ariz. 1964). They apply to laws that "alter the penalty which was attached to any offense, [] create a new penalty, []or change the sentence imposed." *Tyree v. Moran*, 550 P.2d 1076, 1078 (Ariz. 1976). If the penalty is altered by a subsequent law, these general savings provisions require that "the offender shall be punished under the law in force when the offense was committed." Ariz. Rev. Stat. § 1-246. "Absent express language, Arizona statutes are not retroactive." *State v. Stine*, 906 P.2d 58, 59 (Ariz. Ct. App. 1995).

Here, applying the repeal to preclude ADOC from revoking Madrid-Becerra's sentence would effectively "change the sentence imposed," *Tyree*, 550 P.2d at 1078, because Madrid-Becerra would not be subject to the full term of his sentence. And, nothing in the law repealing § 41-1604.14 expressly made it retroactive. Thus, Arizona's general savings statutes require that, for aliens like Madrid-Becerra who were convicted when Ariz. Rev. Stat. § 41-1604.14 was in force, that provision continues to govern their sentences. We conclude that ADOC maintained the authority to revoke Madrid-Becerra's release in 2016 and 2017 because of his illegal re-entry.

C. *The District Court Did Not Factually Err*

Madrid-Becerra alleges that the district court clearly erred when it found that he was under a criminal justice sentence at the time he illegally re-entered the United States. First, he argues that the district court erred by determining that he had notice of the condition that he not return illegally. Second, he argues that the district court erred in determining that he was returned to ADOC custody to serve the remainder of his 2013 sentence.

The district court did not clearly err in either factual determination and there is no plain error of law.**[2]**  First, even if the district court erred in assuming that Madrid-Becerra had received formal notice from the state court during sentencing, Madrid-Becerra has not demonstrated that this alleged error "affected [his] substantial rights."  *Christensen*, 732 F.3d at 1102.  As the district court noted, § 41-1604.14(B) is itself sufficient to provide notice of the condition on Madrid-Becerra's release.  Whether or not Madrid-Becerra received formal notice from the state court is thus irrelevant to whether he was "under any criminal justice sentence."  Because the alleged error would not have affected his criminal history score or the applicable guidelines range, Madrid-Becerra has not demonstrated any prejudice affecting his substantial rights.

Second, the district court did not clearly err in finding that Madrid-Becerra's early release was in fact revoked.  As a preliminary matter, Madrid-Becerra points to no authority indicating that the § 4A1.1(d) enhancement applies only if a defendant's early release was actually revoked.  The Guidelines require simply that a defendant be "under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  U.S.S.G. § 4A1.1 cmt. n.4.  Neither the Guidelines nor its Commentary requires that any parole or release actually be revoked, or that an escapee be apprehended.

---

**[2]** Because Madrid-Becerra did not raise these alleged factual errors until appeal, we review for plain error.  *See United States v. Rangel*, 697 F.3d 795, 800 (9th Cir. 2012).  Madrid-Becerra "bears the burden of showing a reasonable probability that he would have received a different sentence absent the error."  *United States v. Christensen*, 732 F.3d 1094, 1102 (9th Cir. 2013).

Moreover, under Federal Rule of Criminal Procedure 32(i)(3)(A), the district court "may accept any undisputed portion of the [PSR] as a finding of fact." Here, the PSR stated that Madrid-Becerra was "[r]eturned to custody to serve the remainder of the conditional release." Madrid-Becerra concedes that he did not dispute this assertion before the district court. Not only did he not dispute the statement, but in his objection in the addendum to the PSR, Madrid-Becerra admitted that "upon being detected, he was returned to the [ADOC] to serve the remainder of his term." Moreover, we may take judicial notice that the Superior Court's sentencing order for Madrid-Becerra's 2017 conviction indicates that his 2017 sentence would run concurrent with the remainder of his 2013 sentence.[3] Thus, because Madrid-Becerra did not challenge the PSR's statement that he was returned to custody to serve the remainder of his 2013 sentence and there is additional documentation supporting that conclusion—including his own admission—"the district court correctly accepted the report's findings." *United States v. George*, 949 F.3d 1181, 1187 (9th Cir.), *cert. denied*, 141 S. Ct. 605 (2020).

## IV. CONCLUSION

The judgment of the district court is **AFFIRMED**.

---

[3] We **GRANT** the Government's unopposed motion for judicial notice of this document.

CARDONE, District Judge, dissenting:

This case turns on whether a prisoner who has been released from serving his two-and-a-half-year sentence pursuant to Arizona's half-term to deportation program can nevertheless remain "under [a] criminal justice sentence" indefinitely. Because the Guidelines suggest the answer is "no," I respectfully dissent.

This Court has considered § 4A1.1(d)'s application to suspended and deferred sentences, *United States v. Kipp*, 10 F.3d 1463 (9th Cir. 1993); *United States v. Franco-Flores*, 558 F.3d 978 (9th Cir. 2009), unsupervised probation with immediate deportation, *United States v. Ramirez-Sanchez*, 338 F.3d 977 (9th Cir. 2003), and nonrevocable parole, *United States v. Gonzalez*, 739 F.3d 420 (9th Cir. 2013), among other schemes. But it has never considered a "half-term to deportation program" like Arizona's, in which a prisoner begins serving a fixed custodial sentence that a department of corrections suspends for a "potential lifetime duration." As the Government conceded at sentencing, the "half-term release program doesn't fall neatly into" § 4A1.1(d). Based on the plain language, structure, and purposes of the Guidelines, I would hold that Appellant was not "under any criminal justice sentence" at the time of his federal offense.

Section 4A1.1(d) applies to a defendant "under any criminal justice sentence, including . . . parole." The PSR and the majority refer to Arizona's program as "early conditional release," which is a form of parole. *See* CONDITIONAL RELEASE, Black's Law Dictionary (11th ed. 2019). But the two are materially distinguishable. *Compare Kipp*, 10 F.3d at 1467 (holding that defendant's suspended sentence was not

a "criminal justice sentence" because it was distinguishable from the punishments listed in § 4A1.1(d)), *with Gonzalez*, 739 F.3d at 424 (holding that § 4A1.1(d) applied to nonrevocable parole because it was not distinguishable from unsupervised probation).

Where, as here, "a criminal defendant has been committed to the custody of the prison authorities, any period served . . . on parole or conditional release is deemed service of [their] term of confinement, and such inmate is entitled to credit on [their] prison sentence for [that] period." 24 C.J.S. Criminal Procedure and Rights of Accused § 2394 (August 2021 Update). As the Supreme Court has repeatedly observed, "[t]he essence of parole is release from prison . . . on the condition that the prisoner abide by certain rules *during the balance of the sentence*." *Samson v. California*, 547 U.S. 843, 850 (2006) (emphasis added) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). Rather than indefinitely suspending the prisoner's term of incarceration, as was done here, a "paroled prisoner continues to serve his or her sentence while on parole until . . . the maximum term of the sentence expires." 59 Am. Jur. 2d Pardon and Parole § 117 (August 2021 Update). And that makes sense since a parolee "remain[s] in the legal custody and under the control of prison authorities," making parole a "punishment" that "is in legal effect imprisonment." *Id*. By necessity, then, a parolee's sentence continues to run.

The majority maintains that Appellant somehow remained subject to ADOC's legal custody or supervisory control like any other parolee. But if that were true, then Appellant would have remained under a "punishment" that is "in legal effect imprisonment," *see id.*, he would have continued to serve his sentence, and that sentence would have expired

prior to his illegal reentry. That did not happen here. Instead, his custodial sentence stopped running entirely and his service was suspended indefinitely. That is neither parole nor conditional release.

Indeed, Arizona's scheme is distinguishable from every "criminal justice sentence" contemplated by § 4A1.1(d). Section 4A1.1(d) provides that a "criminal justice sentence" includes "probation, parole, supervised release, imprisonment, work release, [and] escape status." Under each of those schemes, a defendant continues to serve their sentence or remains obligated to do so. And for all but "escape status" (discussed below), punishment lasts for a fixed period or range of time, allowing for continued service until the sentence expires.[1] Each day on probation or supervised release, for example, is one day closer to absolute discharge. But not under Arizona's program. Instead, each day Appellant spent on his "conditional release" brought him no closer to the termination of his sentence. There is no

---

[1] For example, Black's Law defines "probation" as "usually on condition . . . over a *specified period of time*." *See* PROBATION, Black's Law Dictionary (11th ed. 2019) (emphasis added). And the Second Circuit has observed that the "practice of imposing indeterminate probationary terms is relatively unique," making it unsurprising that "the Guidelines do not address this situation." *United States v. Rich*, 900 F.2d 582, 584–85 (2d Cir. 1990) (discussing § 4A1.2(c)(1)). Similarly, "supervised release" is defined as "1. *A period* of probation that is imposed in addition to a sentence of imprisonment rather than as a substitute for part or all of that sentence." SUPERVISED RELEASE, Black's Law Dictionary (11th ed. 2019) (emphasis added).

indication in the Guidelines or case law that § 4A1.1(d) applies to such a scheme.**[2]**

That conclusion is bolstered by § 4A1.1(d)'s requirement that the defendant have been "under" a criminal justice sentence. Although the Guidelines do not define that term, this Court and other courts have long suggested that to be "under sentence" for the purposes of § 4A1.1(d), a defendant "need be serving [that] sentence," *United States v. Wright*, 891 F.2d 209, 211 (9th Cir. 1989), or "under a requirement to serve [that] sentence," *United States v. Damon*, 127 F.3d 139, 147 (1st Cir. 1997), at the time of their federal offense.**[3]** And that is consistent with common usage. *See United States v. Leal-Felix*, 665 F.3d 1037, 1041 (9th Cir. 2011). A prisoner "under . . . supervised release" or "under . . . probation" is generally serving their sentence of supervised release or probation, just like a defendant "under . . . parole" is

---

**[2]** Indeed, the Commentary explains that "a *term* of unsupervised probation would be included; but a sentence to pay a fine" would not. U.S.S.G. § 4A1.1(d), cmt. n.4 (emphasis added). A "term," of course, means "[a] fixed period of time." TERM, Black's Law Dictionary (11th ed. 2019). By contrast, a sentence to pay a fine involves no similar temporal quality—there is no term for a defendant to serve.

**[3]** *See also United States v. Alba-Flores*, 577 F.3d 1104, 1111 (9th Cir. 2009) (holding that defendant was "'under a criminal justice sentence' . . . because he was then *serving* an actual term of probation" (emphasis added)); *United States v. Lizarraga-Carrizales*, 757 F.3d 995, 1000 (9th Cir. 2014) (holding that § 4A1.1(d) applied to defendant "serving a criminal justice sentence"); *United States v. Yepez*, 704 F.3d 1087, 1099 (9th Cir. 2012) (Wardlaw, J., dissenting) (explaining that § 4A1.1(d) requires judges to "determine whether a defendant is serving a sentence"); Beverly G. Dyer, *Revising Criminal History: Model Sentencing Guidelines §§4.1-4.2*, 18 FED. SENT. R. 373, 375 n.7 (June 2006) (explaining that § 4A1.1(d) applies to "any criminal justice sentence that the defendant is *still serving*" (emphasis added)).

generally serving his sentence of incarceration. Yet, here, Appellant was neither serving nor required to serve his sentence at all. Rather, "affirmative conduct by the state reliev[ed] [Appellant] of his penal obligation." *See United States v. Thompson*, 925 F.2d 234, 235–36 (8th Cir. 1991).

That § 4A1.1(d) applies to a defendant on "escape status" clarifies the point. Although an escapee ceases to serve his sentence—which is tolled until recapture—he remains "under a requirement to serve [that] sentence." *See Damon*, 127 F.3d at 147. Thus, the Guidelines make clear that although an escapee is no longer "under" his sentence in the usual sense—that is, by being subject to the punishment imposed—he is still "under" that punishment because he has not been excused from serving it. *Cf. United States v. Phipps*, 68 F.3d 159, 163 (7th Cir. 1995) (explaining in the context of a related guideline that "work release, furlough, and escape status all are periods of freedom that are supposed to be followed by time behind bars, with a guard outside the door"); *United States v. Buchanan*, 638 F.3d 448, 453 (4th Cir. 2011) (explaining the "strong federal policy disfavoring fugitives" that "arises from the 'deeply rooted' maxim 'that no man may take advantage of his own wrong.'" (quoting *Glus v. Brooklyn East. Dist. Term.*, 359 U.S. 231, 232 (1959)).

And that observation points to a broader structural truth about the Guidelines: in general, where § 4A1.1(d) is supposed to apply to a defendant who is not currently serving his sentence, the Guidelines expressly say so. *See United States v. Herrera*, 974 F.3d 1040, 1048 (9th Cir. 2020) (interpreting the Guidelines by applying the "well-accepted" rule "that 'a negative inference may be drawn from the exclusion of language from one statutory provision that is

included in other provisions of the same statute'" (quoting *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006)). In addition to identifying "escape status" as a "criminal justice sentence," for example, § 4A1.1(d) also expressly applies to sentences stayed pending appeal, U.S.S.G § 4A1.2(l), outstanding violation warrants "even if [the] sentence would have expired absent such warrant," *id.* § 4A1.2(m), and to defendants who fail to report for service of a sentence, *id.* § 4A1.2(n). Those provisions support a "negative inference" that unless stated otherwise, § 4A1.1(d) does not apply to a defendant who is not serving or under an obligation to serve his sentence. *See Herrera*, 974 F.3d at 1048. And since the Guidelines nowhere mention circumstances remotely analogous to those at issue here, that inference ought to apply.

Finally, the purposes served by § 4A1.1(d) do not support its application here. *See, e.g.*, *Franco-Flores*, 558 F.3d at 981 (applying § 4A1.1(d) in part because doing so "comport[ed] with the U.S. Sentencing Guidelines' expressed purpose[s]"). This Court has explained that "Sections 4A1.1(a)–(c) correlate to the seriousness of a prior offense, while section 4A1.1(d) addresses, in part, the recency of the crime." *United States v. McCrudden*, 894 F.2d 338, 339 (9th Cir. 1990); *see also United States v. Pearson*, 312 F.3d 1287, 1291 (9th Cir. 2002) (Berzon, J., dissenting) (explaining that § 4A1.1(d) provides a "measure of recency"). In other words, the provision punishes "an offender who again violates the law before fully serving his prior punishment." *McCrudden*, 894 F.2d at 339. But here, the Arizona statute did not allow Appellant to fully serve his prior punishment. As Defendant points out, by the time he illegally reentered in June 2016, his sentence of "2.5 years custody" would have been more than fully served. Indeed, by the majority's logic, even if Appellant had illegally reentered decades after his release, he

would still be subject to the two-point enhancement. That seems to go well beyond § 4A1.1(d)'s focus on the "recency of the crime." *See id.*

Nor does Appellant's early release reflect a judgment about the seriousness of his offense. *See* U.S.S.G. § 4A1.1, *Background* (suggesting that the criminal history categories measure "past crime seriousness"). In fact, just the opposite: more serious offenders were precluded from release under the statute. *See* Ariz. Rev. Stat. § 41-1604.14 (prohibiting those convicted of class one and class two felonies from being eligible) (repealed Aug. 6, 2016). As Appellant explains, at its core Arizona's program was a cost-saving measure designed to avoid "the cost of incarcerating [aliens] for the entirety of their sentence." And as the government concedes, the repeal of that program "was intended to ensure inmates subject to deportation *served more, not less*, of their sentences." (emphasis added). In short, Appellant's early release was no indication of his "past crime seriousness." *See* U.S.S.G. 4A1.1, *Background*. As the Second Circuit observed in a related context, "[i]f the duration of an indefinite probation term were determined by some authority other than the sentencing court (such as the State's department of probation), it might be argued that . . . [it] did not reflect the severity of the sentence as viewed by the sentencing court and therefore should not qualify" as a countable prior sentence. *See United States v. Tomasi*, 313 F.3d 653, 658 (2d Cir. 2002). That reasoning applies well here.

The majority argues that Appellant was under a criminal justice sentence because he was "subject to *any* condition that related to a 'custodial or supervisory component' of his sentence." But it cites no authority for such a rule, which at

any rate finds no support in the text. A "criminal justice sentence" is certainly "a sentence . . . having a custodial or supervisory component," U.S.S.G. § 4A1.1(d), cmt. 4, but the Guidelines nowhere suggest that a defendant is "under" such a sentence if he is "subject to any condition related to" it.

The majority also points to several cases that it claims support its position, but each involve a defendant who was either serving or obligated to serve his sentence at the time of his federal offense. In *Ramirez-Sanchez*, for example, the defendant was serving a three-year term of probation when he illegally reentered the country. 383 F.3d at 979–81 (holding that Appellant was under a criminal justice sentence because he had been "sentenced to a term of 'probation,'" and was still "on probation when he commit[ed] the instant offense"); *United States v. Ramirez-Sanchez*, Defendant-Appellant's Opening Brief, 2002 WL 32102836, *4 (May 21, 2002) (noting that defendant was sentenced to "3 years probation, 83 days custody, credit for time served"). Likewise, in *Gonzalez*, the defendant was serving a fixed term of non-revocable parole at the time of his illegal reentry. 739 F.3d at 423–24. And in *McCrudden*, the defendant was serving a two-year term of unsupervised probation at the time of his offense. 894 F.2d at 339.[4] Those cases are not only distinguishable, then, but in fact support the very argument made here.

---

[4] The opinion in *Franco-Flores*, 558 F.3d at 981–82, on which the majority also relies, does not state whether the deferred sentence at issue was for a fixed period. Notably, however, the defendant there was subject to the express provision regarding violation warrants, discussed above. *See* U.S.S.G. § 4A1.2(m).

A "criminal justice sentence" is, at its foundation, "a sentence." U.S.S.G. § 4A1.1(d), cmt. 4; *see also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 36, at 232 (2012) ("[T]he word being defined is the most significant element of the definition's context . . . ."). That is, it is "the punishment imposed on a criminal wrongdoer" by a "judgment that a court formally pronounces." SENTENCE, Black's Law Dictionary (11th ed. 2019). But as in most jurisdictions, Arizona courts are not authorized to impose indefinite punishments. As relevant here, a "sentence of imprisonment for a felony *shall be a definite term of years* . . . [under] the custody of the state department of corrections." Ariz. Rev. Stat. § 13-701 (emphasis added). Appellant's sentence was "2.5 years custody," which was the term required by law for his offense and status. *See id.* § 13-702. If Appellant's early conditional release was a part of that punishment, it could only last for "2.5 years" and would have expired well before his illegal reentry; if it was not a punishment at all, it could not, by definition, be a "criminal justice *sentence*." Either way, § 4A1.1(d) would be inapplicable.

I respectfully dissent.